*FOR PUBLICATION*

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

In re                     )    Case No.  15-28908-E-13

WILLIAM NORBERT McGARVEY and )
SARAH MARIE McGARVEY,      )

       Debtors.         )

_____ )

SARAH McGARVEY,         )    Adv. Proc. No. 18-2053
                      )    Docket Control No. DKM-3

       Plaintiff,        )

v.                          )

USAA SAVINGS BANK,       )

       Defendant.       )

_____ )

## MEMORANDUM OPINION AND DECISION

Sarah McGarvey ("Plaintiff-Debtor") filed this Adversary Proceeding on April 27, 2018, seeking relief against USAA Savings Bank ("Defendant"). On July 6, 2018, Plaintiff-Debtor filed an Amended Complaint. Dckt. 18. Defendant filed a Motion to Dismiss, which resulted in the court granting relief and dismissing all claims in the Amended Complaint except the claim based on the alleged failure to include in, update, or amend the information provided by Defendant about the Plaintiff-Debtor to consumer reporting agencies to disclose that the debt was included in the pending bankruptcy case of Plaintiff-Debtor. Civil Minutes, Dckt. 29; Order, Dckt. 30. Defendant filed its Answer (Dckt. 33) on September 6, 2018. The court has issued its pre-trial conference Scheduling Order which provides that Discovery closes on May 31, 2019. Order, Dckt. 36.

Defendant filed a Motion for Judgment on the Pleadings. Dckt. 41. Defendant asserts that the Amended Complaint fails to state a claim, when applying the pleading standards enunciated by the United States Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868, 884 (2009); and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and judgment should be entered for Defendant. *Id.*

The determination of this Motion lies in two Congressionally enacted statutory schemes - the Bankruptcy Code and the Federal Fair Credit Reporting Act ("FCRA"). As the United States Supreme Court and law professors have taught generations of law students and lawyers, when determining issues arising under a statutory scheme, one's analysis begins with the statutes as enacted and the plain language thereof.[1]

Upon review of the Motion for Judgment on the Pleadings and supporting documents, Opposition pleadings, and the arguments of the respective counsel, the Motion is granted and judgment shall be entered for Defendant USAA Savings Bank on all claims, except for the allegation that failure to report the obligations as being included in Plaintiff-Debtor's bankruptcy case (it being alleged that the "Metro 2 Code D" is necessary to make the information accurate) is a violation of the automatic stay.

**Definitions of Terms Used In Addressing**
**Federal Fair Credit Reporting Act Issues**

Congress has created specific defined terms for the persons and conduct subject to the limitations, rights, powers, and authorizations imposed under the Federal Fair Credit Reporting Act (15 U.S.C. § 1681 et. seq). As in the present Adversary Proceeding, these specifically defined terms get used in a general way, leading to confusion in the application of the law. In this Decision, the following terms are used by the court:

---

[1] *See Hartford Underwriters Insurance Company v. Union Planters Bank, N.A.*, 530 U.S. 1 (2000); *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 103 L. Ed. 2d 290, 109 S. Ct. 1026 (1989). The basic direction from the United States Supreme Court is that Congress says in a statute what it means and means in a statute what it says. *Connecticut Nat. Bank v. Germain,* 503 U.S. 249, 254, 117 L. Ed. 2d 391, 112 S. Ct. 1146 (1992)*;* (quoting *Caminetti v. United States,* 242 U.S. 470, 485, 61 L. Ed. 442, 37 S. Ct. 192 (1917)); *United Savings Association of Texas v. Timbers of Inwood Forest Associates, LTD.*, 484 U.S. 365, 371 (1988).

| "FCRA" | Federal Fair Credit Reporting Act, 15 U.S.C. § 1681 et. seq. |
|---|---|
| "Furnisher" | A person who provides information about a consumer to a consumer reporting agency.<br>15 U.S.C. § 1681s-2. |
| "Consumer Reporting Agency" ("CRA") | "[A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports."  15 U.S.C. § 1681a(f).<br><br>The three main, easily recognizable consumer reporting agencies are Experian, Equifax, and TransUnion.  Consumer Financial Protection Bureau List of Consumer Reporting Agencies, 2019.<br><br>https://files.consumerfinance.gov/f/documents/cfpb_consumer-reporting-companies-list.pdf |
| "Consumer" | An individual for whom the information in the credit report relates.<br>15 U.S.C. § 1681a(c), (d). |
| "Consumer Report" (also referred to as a "Credit Report") | Consumer Report is any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for credit or insurance (primarily for family or household purposes), employment purposes; or as authorized under the FCRA.  15 U.S.C. § 1681a(d). |

**Motion for Judgment on the Pleadings**

Defendant asserts that it is entitled to a Judgment on the Pleadings as provided in Federal Rule of Civil Procedure 12(c), asserting in its Motion (Dckt. 41) the following:

1. "First, the Fair Credit Reporting Act does not require a creditor to report a bankruptcy filing to the credit bureaus. The federal statute only limits the reporting of a bankruptcy filing for ten (10) years in the event that a bankruptcy filing is reported."[2] *Id.*, p. 2:18.5-21.5.

---

[2] As discussed below, this statement is accurate in how long a bankruptcy can be on a credit report that is provided by a CRA, but does not impose a prohibition on a furnisher of information (such as a creditor) providing accurate, truthful information to a CRA. The Parties to this Adversary Proceeding blend the distinct limitations and affirmative obligations that Congress has imposed on furnishers of information and the consumer reporting agencies that assemble and then sell consumer credit reports.

2.    "Second, without an element of harassment or coercion, USAA SB [Defendant] did not attempt to try to collect McGarvey's delinquent debt when it allegedly did not include McGarvey's bankruptcy filing." *Id.*, p. 2:24.5-26.5.

3.    "Until the debt has been discharged in bankruptcy, the delinquent debt still exists. Because the reporting of an existence of a debt does not equate to an attempt to collect on a debt, the same analysis can be used when a creditor decides to report (or not report) a bankruptcy filing." *Id.*, p. 2:26.5-28.5, 3:1.5-2.5.

4.    "A bankruptcy filing does not change the existence of a debt. It is only when the debtor has completed all of her obligations under the Bankruptcy Code and receives a discharge does the filing affect the status of the delinquent account. As such, the omission of reporting a bankruptcy filing is not an attempt to collect a debt, but rather reporting the existence of the debt." *Id.*, p. 2:2.5-7.5.

Defendant filed a Reply to Plaintiff's Opposition, providing specific responses to the Opposition and expanding the discussion of the law. Reply, Dckt. 48. Key points addressed in the Reply include: (1) The case law cited by Plaintiff-Debtor does not address whether Defendant has a legal obligation to report a bankruptcy filing; (2) Plaintiff-Debtor ignores the distinction between a bankruptcy filing and discharge; (3) The FCRA does not require a creditor to furnish information that a bankruptcy case has been filed by a consumer; and (4) A credit report is not inaccurate because the creditor does not furnish information to the CRA that a bankruptcy case has been filed by a consumer.

In asserting that the FCRA does not impose an affirmative burden on a furnisher of information to report bankruptcy filings, "but only prohibits a creditor from reporting bankruptcy filings for more than ten (10) years if the creditor chooses to report the bankruptcy filing," Defendant cites the court to 15 U.S.C. 1681c(a)(1) and 16 C.F.R. § Part 600, Appendix, pp. 558-59 (2011). Points and Authorities, p. 11:21-25, Dckt. 43. While accurately stating a portion of the FCRA, this ignores the requirement that accurate information must be provided.[3]

---

[3] Additionally, when the court went to review 16 C.F.R. § Part 600 and the Appendix referenced by Defendant, the search on LEXIS returned the information that "PART 600 WAS REMOVED AND RESERVED. SEE 76 FR 44462, 44463, JULY 26, 2011.] A review of 76 FR 44462 discloses that the 1990 Commentary referenced by Defendant was rescinded, stating (emphasis added):

The 1996 Amendments expanded the duties of consumer reporting agencies ("CRAs"), and also increased the obligations of users of consumer reports, particularly employers.

1    **Plaintiff-Debtor's Opposition**

2         Plaintiff-Debtor filed an Opposition on February 14, 2019. Dckt. 47.  Plaintiff-Debtor first

3    argues that the merely "reporting" (not stating who has such obligation to "report") is not sufficient

4    to give a "reader" accurate information about a "specific trade line." *Id.*, p. 4:9-12.  The alleged

5    inaccuracy of the information furnished by Defendant arises under 15 U.S.C. § 1681s-2 (which is

6    the specific section of the FCRA addressing obligations of Furnishers to provide accurate and

7    correct inaccurate information).

8         The information that a obligation for which the Furnisher has provided information to a CRA

9    must include disclosure that the obligation is part of a pending Chapter 13 plan so that a future

10   lender considering making a loan to a debtor in a pending Chapter 13 case would know what

11   obligations are included in a Chapter 13 plan and which debts are not.

12        **JUDGMENT ON THE PLEADINGS STANDARD AND APPLICABLE LAW**

13        Federal Rule of Civil Procedure 12(c) providing for a party moving for judgment on the

14   pleadings is incorporated into the bankruptcy adversary proceeding process by Federal Rule of

15   Bankruptcy Procedure 7012.  A motion for judgment on the pleadings does not include matters

16   outside the pleadings at issue (here the Complaint), and if outside matters are included, then the

17   motion is one for a summary judgment.  Fed. R. Civ. P. 12(d), Fed. R. Bankr. P. 7012.  The court

18   has not allowed such matters outside the pleadings to be presented and has before it a motion based

19   on the Amended Complaint filed by Plaintiff-Debtor.

20        On a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the

21   allegations of the non-moving party must be accepted as true, while the allegations of the moving

22   party, which have been denied, are assumed to be false. *Hal Roach Studios, Inc. v. Richard Feiner*

23

24        Most significantly, **the 1996 Amendments imposed duties on a class of entities not
25        previously treated by the FCRA--furnishers of information to CRAs**--by including
         requirements related to accuracy and the handling of disputes by the entities that provided
26        information to CRAs.
         . . .
27        Accordingly, for the reasons set forth above, under the authority of 16 U.S.C. 1681s, the
         Commission amends Title 16, Chapter I, Code of Federal Regulations, by removing and
28        reserving part 600.

& Co., Inc., 896 F.2d 1542, 1548 (9th Cir. 1989). Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law. *Id.* Dismissal is proper only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim that would entitle him to relief. *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1115 (C.D. Cal. 2004). While the court must construe the complaint and resolve all doubts in the light most favorable to the plaintiff, the court does not need to accept as true conclusory allegations or legal characterizations. *Id.* (*citing General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989); *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir. 1988)).

A motion for judgment on the pleadings based on Federal Rule of Civil Procedure 12(c) is a functional equivalent of a motion to dismiss under Federal Rule of Civil Procedure 12(b), requiring the same underlying analysis. *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Thus, for a complaint to withstand a Rule 12(c) motion for judgment on the pleadings, it must contain more detail than "bare assertions" that are "nothing more than a formulaic recitation of the elements" required for the claim. *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009). Courts must draw upon their "experience and common sense" when evaluating the specific context of the complaint and whether it contains the necessary detail to state a plausible claim for relief. *Id.* at 679. The factual content on the face of the complaint—not conclusory statements in the pleading—and reasonable inferences drawn from those facts must plausibly suggest that the plaintiff could be entitled to relief for the pleading to survive a Rule 12(c) motion. *See id.* at 677.

In discussing the basic pleading requirements in connection with a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), the Ninth Circuit Court of appeals determined that the court may consider "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). However, the court need not accept unreasonable inferences or conclusory deductions of fact cast in the form of factual allegations. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Nor is the court "required to accept legal conclusions cast in the form of factual

1  allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult*

2  *Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994) (citations omitted)

3       In considering whether the First Amended Complaint survives the Motion for Judgment on

4  the Pleadings, the United States Supreme Court has provided the following guidance with respect

5  to a "short plain statement" needing to be more than merely parroting a statute or legal theory.  A

6  plaintiff cannot "plead the bare elements of his cause of action, affix the label 'general allegation,'

7  and expect his complaint to survive a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 687

8  (2009).  Instead, a complaint must set forth enough factual matter to establish plausible grounds for

9  the relief sought.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("[A] plaintiff's

10  obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

11  conclusions, and a formulaic recitation of a cause of action's elements will not do.").

12                    **REVIEW OF FIRST AMENDED COMPLAINT**

13       The court's consideration of the Motion now before it begins with the First Amended

14  Complaint.  This sets the stage to consider Defendant's Motion.  The one cause of action which has

15  survived the prior motion to dismiss and remains before the court in this Adversary Proceeding has

16  been stated by the court in the Order on the Motion to Dismiss as:

17

18     1. The claim stating relief for the alleged failure of Defendant to update, correct,
       or include in the information reported to the consumer reporting agencies that the
       asserted obligation owed to Defendant is included in or subject to Plaintiff-Debtor's
19     bankruptcy case.

20  Order, Dckt. 30.

21  **Review of First Amended Complaint[4]**

22       The court has identified the following as the short plain statement of a claim in the First

23  Amended Complaint upon which the relief relating to the failure to include information about the

24  bankruptcy case in the information furnished by Defendant to the CRA:

25

26

27       [4]  The court has included the level of detail in the pleadings to demonstrate the clear pleading by
      Plaintiff-Debtor in asserting the claim for relief. This not only shows a good example of pleading, but
      facilitates the analysis of these issues, including how in the "real world" many of the concepts and

28  defined terms of and activities relating to consumer reports covered by the FCRA become blurred.

A.    Plaintiff-Debtor commenced her Chapter 13 bankruptcy case (15-28908) on November 16, 2015. First Amended Complaint ¶ 2, Dckt. 18.

B.    The Consumer Data Industry Association (the "CDIA") is an international trade association for the consumer credit, mortgage reporting, employment and tenant screening and collection services industry. *Id.* ¶ 9.

C.    The CDIA has adopted a standard electronic data reporting format called the Metro 2 Format. *Id.* ¶ 9.

D.    The Metro 2 Format is the credit reporting industry standard for accurate credit reporting. *Id.* ¶ 11.

E.    The credit reporting industry at large depends on the Metro 2 Format. *Id.* ¶ 12.

F.    The CDIA produces a consumer reporting resource guide ("CRRG"). *Id.* ¶ 14. This guide "acknowledges" the collection aspects of credit reporting. *Id.*

G.    The CRRG "instructs" data furnishers not to report ongoing delinquencies once a bankruptcy is filed. *Id.* ¶ 15. Instead, CRRG "instructs" data furnishers to report "no data" in the payment history and to update the balances to indicate "zero balances."[5]

H.    A guide published by the CDIA recommends creditors fill out a Consumer Information Indicator ("CII") where a consumer has a special condition such as bankruptcy. *Id.* ¶ 14–19.

I.    The CDIA recommends using CII designation "D" to indicate a consumer has filed bankruptcy to indicate that creditors are not free to collect against the consumer. *Id.* ¶ 20–24.

J.    Creditors "often" use credit reporting as a means to coerce payment from debtors. *Id.* ¶ 26.

K.    "Specifically, when consumers become delinquent on their debts creditors will often warn consumers that failure to pay their delinquent balance will result in their delinquency being reported to the major credit reporting agencies." *Id.* ¶ 27.

L.    Creditors like Defendant knows that reporting delinquent debts is "part and parcel to the credit world's debt collection activity." *Id.* ¶ 28.[6]

---

[5] As the court addressed with the respective counsel at the hearing, an "industry guide" which purports to instruct furnishers of data to a CRA to provide incorrect data, such as stating that an obligation has a zero balance when that is not he amount of the unpaid obligation, is not consistent with the Federal Fair Credit Reporting Act which exists to, in part, ensure that there is accurate information on a consumer credit report. See discussion *infra* of Congressional statutorily stated purpose served by the enactment of the FCRA and the enforcement of its provisions.

[6] This reference to credit reporting as being the "credit world's debt collection activity" may be a reference to consumer reports containing positive information, such as payment of obligations (including amounts), and negative information, such as unpaid obligations (including amounts). As discussed below, Congress enacted the FCRA so that there would be accurate information to be used by future creditors. That accurate negative information might be something a consumer would seek to avoid or to

M.    Defendant "as a policy to enhance collection activities will call and send letters to debtors warning that failure to pay a debt will result in a delinquency being reported to the main credit bureaus." *Id.* ¶ 35.

N.    Defendant reports delinquencies for the purpose of coercing debtors to pay. *Id.* ¶ 34.[7]

O.    Defendant knows that by failing to report the CCI "D" designation to indicate a consumer filed bankruptcy, together with continued reporting of the delinquency, that the Plaintiff-Debtor would be coerced into making payments because Defendant "knows that such reporting alerts other lenders that this debt SHOULD be paid but has not been paid." *Id.* ¶ 36.

P.    Defendant was sent actual notice by the Bankruptcy Noticing Center via electronic mail of the automatic stay in Plaintiff-Debtor's Chapter 13 bankruptcy case, filed on November 16, 2015. *Id.* ¶ 38.

Q.    Post-filing, Defendant continued to report on Plaintiff-Debtor's credit report that her account was in collections with a past-due balance owed. *Id.* ¶ 39.

R.    Plaintiff-Debtor disputed Creditor's reported information with the three major consumer reporting agencies. *Id.* ¶ 40. The Complaint asserts that by not reporting is using the "D" code for the Metro 2, such failure created inaccurate information stating that the debtor "should be paid" but was not.[8]

S.    Plaintiff-Debtor asserts that the dispute was sent by the three major consumer reporting agencies to Defendant. *Id.* ¶ 41. The dispute was that Defendant's obligation should include the information that it was subject to Plaintiff-Debtor's Chapter 13 bankruptcy case. *Id.* ¶ 42.

T.    Defendant filed two separate claims in Plaintiff-Debtor's Chapter 13 bankruptcy case on January 26, 2016. *Id.* ¶ 43.

U.    Notwithstanding having notice of the Chapter 13 Bankruptcy Case, Defendant "continued to report on Plaintiff-Debtor's credit report that money was owed and that the account as in collections." *Id.* ¶ 45

V.    Defendant's employee Beverly Bain ("Bain") received notice of Plaintiff-Debtor's dispute over the credit reporting and her bankruptcy filing, but intentionally failed

---

remediate to enhance that consumer's ability to obtain credit in the future is the consumer's choice, as opposed to it being forced by a creditor (such as when a creditor obtains a wage garnishment or levy on a bank account). While consumer credit may be viewed as more of a "necessity" in 21st Century America, it is still the consumer's choice in obtaining such credit.

[7] The First Amended Complaint does not allege that this statement would be false - that the account was not in "collections." It is not alleged that there was not an obligation that was owed or that Defendant could not attempt to "collect" what was owed as permitted by the Bankruptcy Code.

[8] Plaintiff-Debtor's use of the word "should be paid" has an interesting qualitative patina. Debts generally should be paid, except as otherwise provided by law. At oral argument Plaintiff-Debtor stated that this meant that not using the "D" code showing that the debt was included in a pending bankruptcy case, it is an affirmative statement by Defendant that it can be actively working to collect the debt notwithstanding the filing of the bankruptcy case.

to update the CII and continued reporting delinquency in an attempt to coerce payment. *Id.* ¶ 46–51.

W. Defendant's failure to update the information provided to use the Metro 2 Code "D" to show that the reported unpaid obligation was included in the pending Chapter 13 Case is stated to have been done with knowledge of, intentionally to "exert pressure on Plaintiff[-Debtor] and coerce payment." *Id.* ¶¶ 48-51

X. "As it currently stands, the only way for Plaintiff[-Debtor] to remove the collections notation and past-due balance from her USAA account is to pay USAA what it is reporting is owed, despite USAA filing claims in Plaintiff[-Debtor]'s case in order to be paid." *Id.* ¶ 55.

At this juncture the court needs to address the assertion that Plaintiff-Debtor, as a consumer, can "remove" otherwise accurate information from her credit report. As discussed below, Plaintiff-Debtor has not provided the court with legal authority that mere payment of a delinquent obligation allows the CRA or data furnisher to expunge the record of accurate information relating to an obligation. True and accurate credit history to maintain a credit reporting system as enacted by Congress does not allow a creditor to "sell" or a consumer to "buy off" a false credit history by deleting accurate information, including that of late or non-payment of financial obligations. Paragraph 55 of the First Amended Complaint indicates a belief by Plaintiff-Debtor and her counsel that the FCRA allows a consumer to *purchase* inaccurate data to be placed in his or her credit report.

Y. It is asserted, without stating any acts other than the non-use of the Metro 2 D code, that Defendant is attempting to receive payment from Plaintiff-Debtor directly as well as under Plaintiff-Debtor's Chapter 13 Plan. *Id.* ¶ 56.

Z. Defendant's failure to use the Metro 2 D code constitutes a violation of the automatic stay because:

1. Defendant's acts were intentional and with prior knowledge of the automatic stay, *Id.* ¶¶ 60-61;

2. Such acts by Defendant were unreasonable. *Id.* ¶ 60.

3. Defendant was aware of the Chapter 13 Bankruptcy Case and Defendant failed to update the information provided to the CRA to include the Metro 2 D code showing that the obligation was included in Plaintiff-Debtor's Chapter 13 Bankruptcy Case. *Id.* ¶ 62.

4. Defendant failed to update the account information, ignored Plaintiff-Debtor's dispute and industry guidelines. *Id.* ¶ 63.

5. Defendant intended to harm Plaintiff-Debtor's credit score by failing to update the information to include the Metro 2 D code by harming Plaintiff-Debtor's credit score. *Id.* ¶ 64.

10

6.    By failing to use the Metro 2 D code, "the only way for Plaintiff[-Debtor] to address the derogatory and inaccurate reporting is for her to pay the balance that USAA indicates is owed."[9] *Id.* ¶ 65.[10]

7.    "Had USAA updated the CII to reflect the bankruptcy filing Plaintiff[-Debtor]'s credit would not be harmed and it would not appear that she still owed money to USAA or that USAA was actively collecting on the account."[11] *Id.* ¶ 66.

**FAIR CREDIT REPORTING ACT**

The court begins with a review of the plain language of the FCRA as enacted by Congress. The court will then review the respective case law citations, many unpublished decisions, cited by the Parties.

This court begins with the expressly stated Congressional findings and intent in the FCRA itself set forth in 15 U.S.C. § 1681. The FCRA and its statutory scheme for "credit reporting" is

---

[9]  This repeats Plaintiff-Debtor's assertion that a consumer can remove negative information, a debt not timely paid, by belatedly paying it. The court is unaware of any provisions of the Federal Fair Credit Reporting Act that allow a furnisher of information to delete otherwise accurate information as the "pay off" for a consumer belatedly paying a debt.

[10]  Congress expressly provides in the FCRA a statutory dispute structure, imposing obligations not only on the Furnisher to respond, but the CRA to only provide accurate information. These include: [1] 15 U.S.C. § 1681c(f) requiring a CRA to include in the consumer report that an item of information is disputed by the consumer; [2] 15 U.S.C. § 1681s-2(a)(3) imposing duty of Furnisher to provide notice of a consumer dispute to the CRA; [3] 15 U.S.C. § 1681s-2(a)(8) creating the ability of consumer to dispute information directly with the Furnisher; and [4] 15 U.S.C. § 1681-2(b) imposing duties on Furnisher to conduct investigation and report conclusions not only to the consumer but also to the CRA.

In citing to these statutory provisions that are part of a complex statutory structure, the court acknowledges that many consumers are the "least sophisticated consumers" to be afforded the protection under the FCRA. For consumers who have the advantage of having knowledge counsel representing them, as in the present case, these rights and powers can be relatively exercised. Additionally, as discussed below, a Furnisher seeking to abuse the FCRA as part of a scheme to get monies from a least sophisticated consumer in violation of the Bankruptcy Code will have other conduct to move money from the consumer to the Furnisher, such as demanding payment, and not merely have the least sophisticated creditor worry about how the asserted inaccurate information, will impact future credit scores for that least sophisticated consumer.

[11]  As addressed above, notwithstanding the filing of bankruptcy, the Plaintiff-Debtor still owed the obligation to Defendant and Defendant could attempt to "collect" the obligation as permitted by the Bankruptcy Code - which in Plaintiff-Debtor's Chapter 13 case appears to be by filing the proofs of claim. Further, at the time of the bankruptcy case and this Adversary Proceeding Plaintiff-Debtor has not obtained a discharge. 11 U.S.C. § 524, discussed *infra*.

built on a foundation of both accuracy and fairness in the information reported to CRAs and information provided by Furnishers on information about consumers, as stated in 15 U.S.C. § 1681(a), which states (emphasis added):

    (a)    Accuracy and fairness of credit reporting

        The Congress makes the following findings:

    (1)    The **banking system is dependent upon fair and accurate credit reporting**. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

    (2)    An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.

    (3)    **Consumer reporting agencies have assumed a vital role** in assembling and evaluating consumer credit and other information on consumers.

    (4)    There is a need **to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect** for the consumer's right to privacy.

The information is not only to be fair for the consumer, but **accurate** for everyone who uses the consumer report. Congress continues addressing the purpose for this federal statutory scheme, stating:

    (b)    Reasonable procedures

        It is the purpose of this subchapter to require that consumer reporting agencies adopt **reasonable procedures for meeting the needs of commerce for consumer credit,** personnel, insurance, and other information in a manner which **is fair and equitable to the consumer**, with regard to the confidentiality, **accuracy,** relevancy, **and proper utilization of such information** in accordance with the requirements of this subchapter.

15 U.S.C. § 1681(b) (emphasis added). While procedures for the use of the information in commerce adopted are to be fair and equitable for the consumer, they must exist to provide accurate information.

    With respect to the conduct of and duties of Furnishers who provide information to CRAs, the FCRA includes the following provisions in 15 U.S.C. § 1681-s2 provide:

    (a)    Duty of furnishers of information to provide accurate information

      (1)     Prohibition

           (A)     Reporting information with actual knowledge of errors

A person **shall not furnish any information** relating to a consumer to any consumer reporting agency **if the person knows or has reasonable cause to believe that the information is inaccurate.**

           (B)     Reporting information after notice and confirmation of errors

A person shall not furnish information relating to a consumer to any consumer reporting agency if–

               (i)     the **person has been notified by the consumer**, at the address specified by the person for such notices, that **specific information is inaccurate**; and

               (ii)     the **information is, in fact, inaccurate**.

15 U.S.C. § 1681s-2(a)(1) (emphasis added). As provided above, a Furnisher must provide accurate information, and not provide inaccurate information when discovered or notified by a consumer, *if such information is actually inaccurate*, and not merely because it is disputed by the consumer.

The FCRA imposes an affirmative obligation on a Furnisher to update previously furnished information to a CRA when the Furnisher discovers that it is inaccurate or after being notified of an inaccuracy by the consumer, *if such information is actually inaccurate*.

      (2)   Duty to correct and update information. A person who–

           (A)   regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about the person's transactions or experiences with any consumer; and

           (B)   **has furnished** to a consumer reporting agency **information** that the person **determines is not complete or accurate**, **shall promptly** notify the consumer reporting agency of that determination and **provide to the agency any corrections to that information**, or any additional information, that is necessary to make the information provided by the person to the agency complete and accurate, and shall not thereafter furnish to the agency any of the information that remains not complete or accurate.

15 U.S.C. § 1681s-2(a)(2) (emphasis added).

For the CRAs, Congress provides in 15 U.S.C. § 1681c specific provisions relating to the information included in consumer reports by CRAs. In 15 U.S.C. § 1681c(a)(1)-(5) Congress limits the time that specific information may be included on a consumer report - including the 10-year period for bankruptcy information, stating:

(a) Information excluded from consumer reports.  Except as authorized under subsection (b), no consumer reporting agency may make any consumer report containing any of the following items of information:

>    (1) Cases under title 11 of the United States Code or under the Bankruptcy Act that, from the date of entry of the order for relief or the date of adjudication, as the case may be, antedate the report by more than 10 years.

In 15 U.S.C. § 1681c(d), Congress further provides that what additional information about bankruptcy cases must be included by a CRA on the consumer report:

>    (d) Information required to be disclosed.

>    (1) Title 11 information. Any consumer reporting agency that furnishes a consumer report that contains information regarding any case involving the consumer that arises under title 11, United States Code, **shall include in the report an identification of the chapter of such title 11 under which such case arises if provided** by the source of the information. If any case arising or filed under title 11, United States Code, is withdrawn by the consumer before a final judgment, the consumer reporting agency **shall include in the report that such case or filing was withdrawn upon receipt of documentation certifying such withdrawal**.

The FCRA does not include other special reporting or furnishing requirements for bankruptcy information, other than the requirement that it be accurate.

**Regulations For the Fair Credit Reporting Act**

The Consumer Financial Protection Bureau has under the Dodd Frank Act rule making authority for a number of federal consumer protection statutory acts, including the FCRA. 12 U.S.C. § 5512.  The Consumer Financial Protection Bureau has issued Regulations for implementation of the FCRA. 12 C.F.R. 1022.1 et. seq.  With respect to the duties of a Furnisher to provide accurate information and to update or correct inaccurate information, the Regulations provide the following definitions:

>    § 1022.41 Definitions.

>    For purposes of this subpart and appendix E of this part, the following definitions apply:

>    (a) Accuracy means that information that a furnisher provides to a consumer reporting agency about an account or other relationship with the consumer correctly:

>    >    (1) **Reflects the terms of and liability** for the account or other relationship;

>    >    (2) Reflects the consumer's performance and other conduct with respect to the account or other relationship; and

(3) Identifies the appropriate consumer.

. . .

(d) Integrity means that information that a furnisher provides to a consumer reporting agency about an account or other relationship with the consumer:

(1) Is substantiated by the furnisher's records at the time it is furnished;

(2) Is furnished in a form and manner that is designed to minimize the likelihood that the information may be incorrectly reflected in a consumer report; and

(3) Includes the information in the furnisher's possession about the account or other relationship that the Bureau has:

(i) Determined that the absence of which would likely be materially misleading in evaluating a consumer's creditworthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living; and

(ii) Listed in section I(b)(2)(iii) of appendix E of this part [the credit limit, if in the furnisher's possession].

12 C.F.R. 1022.41(a), (d).

## REVIEW OF CITATIONS BY THE PARTIES
## AND ADDITIONAL CASES

The Parties have presented the court with the opportunity to consider an area of non-bankruptcy law which is intertwined with most of the consumers and consumer creditors that appear in this court. Many of the authorities cited are unreported decisions.

Defendant opens with the decision in *Abbot v. Experian Info. Solutions, Inc.*, 179 F. Supp. 3d 940, 946 (N.D. Cal. 2016), for the proposition that a violation of the FCRA does not automatically make a violation of the automatic stay. However, the conclusion reached by the District Court in *Abbot* does not appear to be quite as absolute as stated by Defendant. The ruling by the District Court in *Abbot*, which involved the CRA, not the Furnisher of information to a CRA, includes:[12]

---

[12]  The court has included extensive quotations from prior cases of other courts than merely summarizing them. There are two reasons for this. First, to paraphrase the Hon. Loren S. Dahl from decades ago, "if the prior decisions provide a clear, thoughtful analysis, quote it and do not merely make it a summary argument." Second, this pulls together into one place for the Parties and others the analyzes of the judges in decisions that are often summarized in argument by opposing parties in this type of

Credit Bureau argues that, as a matter of law, reporting historically accurate balances during the pendency of a bankruptcy can not be inaccurate or incomplete under the FCRA. Mot. at 8-9. **However, courts in this district have found that reporting delinquent payments during bankruptcy may be misleading depending on the circumstances, including whether the report fails to indicate that a charge is disputed or part of a bankruptcy.** *See Mortimer v. Bank of Am., N.A.*, 2013 U.S. Dist. LEXIS 51877, 2013 WL 1501452, at *4 (N.D. Cal. Apr. 10, 2013) (finding that reporting delinquencies during the pendency of bankruptcy is not misleading so long as the creditor reports that the account was discharged through bankruptcy and the outstanding balance is zero); *Venugopal v. Digital Fed. Credit Union*, 2013 U.S. Dist. LEXIS 43829, 2013 WL 1283436, at *3 (N.D. Cal. Mar. 27, 2013) (holding that reporting of historically accurate debt may violate the FCRA when the reporting did not include that the debt was discharged in bankruptcy or that the debt was in dispute). Accordingly, the Court turns to Plaintiff's particular allegations.

In the instant case, Plaintiff asserts that Credit Bureau's reporting is inaccurate because it is inconsistent with Plaintiff's Chapter 13 bankruptcy plan. However, **Plaintiff does not allege the terms of the Chapter 13 bankruptcy plan; that the balance owed to Credit Bureau was included in the bankruptcy plan; or that the debt has either been paid or discharged.** Nor does **Plaintiff indicate whether Credit Bureau's reporting included a notation about the pending bankruptcy or any disputes.** Plaintiff seems to recognize these failures, as Plaintiff's opposition attempts to explain—in general terms—Plaintiff's bankruptcy plan. See Opp. at 2-3. However, Plaintiff cannot avoid dismissal by alleging new facts in an opposition to a motion to dismiss. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."). Accordingly, Plaintiff fails to allege that Credit Bureau's reporting was inaccurate or incomplete because it was inconsistent with Plaintiff's Chapter 13 bankruptcy plan.

*Abbot v. Experian Info. Solutions*, 179 F. Supp. 3d 940, 946 (N.D. Cal. 2016). Though the cases cited in *Abbot* make reference to situations where there is a dispute or the debt was discharged, the District Court Judge goes further to state that one of the missing allegations in the complaint in *Abbot* was a failure to assert the Furnisher failed to include that the debt was included in the debtor's then pending bankruptcy case.

Going to the Ninth Circuit Court of Appeals, Defendant then directs the court to *Carvalho v. Equifax Info. Servs., LLC.,* 629 F.3d 876, 890 (9th Cir. 2010), for the proposition that Plaintiff-Debtor must assert an "actual inaccuracy" in the information furnished by Defendant. However, that decision related to the reinvestigation requirement imposed under the FCRA (15 U.S.C. § 1681i)

FCRA ligation as being absolutely supportive of their position and fatal to their opponents. As shown, these decisions are not nearly as diametrically in conflict, but rather work in developing the application of the FCRA.

1    when the consumer disputes information that was furnished.  Thus, for a consumer to assert a claim

2    that a Furnisher failed to fulfill its obligation to reinvestigate the disputed information, the consumer

3    must show that there was actually inaccurate information for which reinvestigation was warranted.[13]

4          While the court is directed to *Carvalho*, the present claim being asserted is not that

5    Defendant failed to reinvestigate when Plaintiff-Debtor disputed the information, but that the

6    information was inaccurate because Defendant failed to include in the information furnished that the

7    obligation was subject to Plaintiff-Debtor's bankruptcy case (one of the possible violations indicated

8    in the *Abbot* case cited by Defendant).

9          The Plaintiff-Debtor directs the court to *Doster v. Experian Info. Solutions, Inc.*, 2017 WL

10   264401, *4 (N.D. Cal. 2017).  The court in *Doster* dismissed with prejudice that plaintiff's

11   contention that the information in the report about the debts was inaccurate because they were not

12   stated based on the terms of the Chapter 13 Plan.  Rather than paraphrasing Judge Lucy H. Hoh's

13   decision, the court quotes her detailed analysis which discusses these issues and various referenced

14   cases as follows:

15         However, the Court has repeatedly rejected Plaintiff's argument [that a
      confirmation order is a final judgment which fixes the amount of debt owed, and that
16    therefore once a chapter 13 plan is confirmed a creditor is bound by the terms of the
      plan and a credit report must therefore reflect only the terms of the plan].  In
17    *Blakeney v. Experian Info. Sols., Inc.*, 2016 WL 4270244 (N.D. Cal. Aug. 15, 2016),
      this Court held that although reporting delinquent payments may be misleading if the
18    debts have been discharged in bankruptcy, **"it is not misleading or inaccurate to
      report delinquent debts that have not been discharged."** *Id.* at *5. In *Jaras v.
19    Experian Info. Sols.*, Inc., 2016 WL 7337540, at *3 (N.D. Cal. Dec. 19, 2016), **this
      Court held that "as a matter of law, it is not misleading or inaccurate to report
20    delinquent debts during the pendency of a bankruptcy proceeding prior to the
      discharge of the debts.**" Other courts in this district have consistently reached the
21    same conclusion. *See Mortimer v. JP Morgan Chase Bank, N.A.*, 2012 WL 3155563,
      at *3 (N.D. Cal. Aug. 2, 2012) ("*Mortimer I*") ("While it might be good policy in
22    light of the goals of bankruptcy protection to bar reporting of late payments while a
      bankruptcy petition is pending, neither the bankruptcy code nor the FCRA does
23    so."); *Mortimer v. Bank of Am.*, N.A., 2013 WL 1501452, at *4 (N.D. Cal. Apr. 10,
      2013) ("*Mortimer II*") (finding that reporting delinquencies during the pendency of
24    bankruptcy is not misleading so long as the creditor reports that the account was
      discharged through bankruptcy and the outstanding balance is zero); *Giovani v. Bank
25    of Am., N.A.*, 2012 WL 6599681, at *6 (N.D. Cal. Dec. 18, 2012) ("*Giovani I*")

26

27         [13]  In *Carvalho* the Ninth Circuit Court of Appeals recognized that the FCRA was not intended to
      create litigation where there was no inaccurate information and that the reinvestigation obligations when a
28    dispute was raised are violated when there was some inaccuracy for which reinvestigation was warranted.

(holding that it was not misleading or inaccurate for a furnisher to report overdue payments on debtor's account during pendency of Chapter 7 bankruptcy petition but prior to discharge); *Giovanni v. Bank of Am., N.A.*, 2013 WL 1663335, at *6 (N.D. Cal. Apr. 17, 2013) ("*Giovanni II*") (same); *Harrold v. Experian Info. Sols., Inc.*, 2012 WL 4097708, at *4 (N.D. Cal. Sept. 17, 2012) ("[R]eports of delinquencies in payment while bankruptcy proceedings are still ongoing is not 'incomplete or inaccurate' information.").

As discussed at length in *Blakeney*, *Jaras*, and other cases, the legal status of a debt does not change until the debtor is discharged from bankruptcy. 11 U.S.C. § 1328; *Blakeney*, 2016 WL 4270244, at *6 ("Plaintiff is not entitled to receive a discharge of debts covered under Plaintiff's Chapter 13 bankruptcy plan until Plaintiff has completed all payments provided for under the Chapter 13 bankruptcy plan."). Confirmation of a payment plan is not sufficient to alter the legal status of a debt, because if a debtor fails to comply with the Chapter 13 plan, the debtor's bankruptcy petition can be dismissed, in which case the debt will be owed as if no petition for bankruptcy was filed. *See In re Blendheim*, 803 F.3d 477, 487 (9th Cir. 2015) ("[D]ismissal returns to the creditor all the property rights he held at the commencement of the Chapter 13 proceeding."); *see also Elliott*, 150 B.R. at 40 ("[E]ven if a confirmed Chapter 13 plan did bar challenges to the underlying claims, res judicata would not apply where the confirmed plan had been dismissed."). Thus, **a confirmation order does not constitute a final determination of the amount of the debt, and it is not misleading or inaccurate to report delinquent debt during the pendency of a bankruptcy proceeding but before discharge.** In short, even if Plaintiff is correct that Plaintiff's credit report did not reflect the terms of Plaintiff's Chapter 13 bankruptcy plan, this would not be an inaccurate or misleading statement that could sustain a FCRA claim against Experian.

Plaintiff's invocation of "industry standards" does not undermine this conclusion. FAC ¶ 80 ("Post confirmation the accepted accurate credit reporting standard for reporting balances is to report the balance owed under the Chapter 13 plan terms."). Indeed, this Court recently rejected an identical "industry standards" argument in *Devincenzi v. Experian Information Solutions*, 2017 WL 86131 (N.D. Cal. Jan. 10, 2017); *Keller v. Experian Information Solutions*, 2017 WL 130285 (N.D. Cal. Jan. 13, 2017); and *Connors v. Experian Info. Sols., Inc.*, 2017 WL 168493 (N.D. Cal. Jan. 17, 2017). As this Court explained in *Devincenzi*, *Keller*, and *Connors*, courts in this district have **repeatedly held that accurately reporting a delinquent debt during the pendency of a bankruptcy is not rendered unlawful simply because a plaintiff alleges that the reporting, though accurate, was inconsistent with industry standards**. *Devincenzi*, 2017 WL 86131, at *6; Keller, 2017 WL 130285, at *7; Connors, 2017 WL 168493, at *4. For example, in *Mortimer II*, the Court held that "[t]o the extent that the account was delinquent during the pendency of the bankruptcy, failure to comply with the CDIA guidelines does not render the report incorrect." 2013 WL 1501452, at *12. Similarly, in *Sheridan v. FIA Card Services, N.A.*, 2014 WL 587739 (N.D. Cal. Feb. 14, 2014), the court followed *Mortimer* in "reject[ing] the argument that failure to comply with industry standards violates the FCRA where the information itself is nonetheless true." Id. at *5. Additionally, in *Mestayer v. Experian Information Solutions, Inc.*, 2016 WL 7188015 (N.D. Cal. Dec. 12, 2016) ("*Mestayer III*"), the court held that at least when a credit report acknowledges the existence of a pending bankruptcy, reporting a delinquent debt during the pendency of a bankruptcy is not inaccurate or misleading "even if [the report] otherwise did not fully comply with" industry standards. Id. at *3; see also *Mestayer v. Experian Info. Solus., Inc.*, 2016 WL 3383961 (N.D. Cal. June 20, 2016) (same); *Hupfauer v. Citibank, N.A.*, 2016 WL 4506798 (N.D. Ill. Aug. 19, 2016) (citing *Mortimer* for the proposition that

"Plaintiff's argument that Experian's reporting deviated from guidelines set by the Consumer Data Industry Association is beside the point, **as these guidelines do not establish the standards for accuracy under the FCRA**."). The same is true here.

*Doster v. Experian Information Solutions, Inc.*, 2017 WL 264401 (N.D. Cal. 2017) (emphasis added).

Plaintiff-Debtor has countered with *Nissou-Raban v. Capital One Bank (USA), N.A.*, 2016 WL 4508241 (S.D. Cal. June 6, 2016), for the proposition that alleging a violation of reporting standards can in some circumstances be sufficient to state a claim under the FCRA. The *Nissou-Raban* court rejected the contention that furnishing information about the debt while the bankruptcy case proceedings were pending (pre-discharge) were a violation of the FCRA, that court concluding:

> Collection activities are automatically stayed when a person files for bankruptcy. 11 U.S.C. § 362(a). **It does not follow, however, that reporting on debts in a way that reflects their status at the time bankruptcy proceedings were pending**, instead of their status after the debt was discharged, **is inaccurate**. The Court agrees with other district courts that have addressed this question that **otherwise accurate negative credit reporting is not retroactively made inaccurate because a bankruptcy petition later discharged the debt**. *See, e.g., Giovanni v. Bank of Am., N.A.*, No. C 12-02530 LB, 2012 WL 6599681, at *5–6 (N.D. Cal. Dec. 18, 2012); *Mortimer v. JP Morgan Chase Bank, N.A.*, No. C 12-1936 CW, 2012 WL 3155563, at *3 (N.D. Cal. Aug. 2, 2012). Thus, **pleading facts that show a furnisher reported information that was accurate while bankruptcy was pending** but before the debt was discharged **does not, as a matter of law, provide the predicate inaccuracy necessary to state an FCRA or CCRAA** claim. *See Giovanni*, 2012 WL 6599681, at *6; Mortimer, 2012 WL 3155563, at *3.

*Nissou-Raban v. Capital One Bank (USA), N.A.*, 2016 WL 4508241 *3 (S.D. Cal. June 6, 2016) (emphasis added).

However, the court in *Nissou-Raban* did deny that defendant's motion for judgment on the pleadings based on an allegation that the failure of a furnisher of information to follow the Metro 2 standard could result in there being some misleading information that was otherwise accurately reported.

The court has also been directed to *Conrad v. Experian Info. Solutions, Inc.*, 2017 U.S. Dist. LEXIS 68641 (N.D. Cal. 2017). In *Conrad*, the District Court was ruling on a furnisher's motion to dismiss. The motion was granted with leave to amend. The District Court rejected that plaintiff's contention that reporting the accurate contractual obligation during the pending of a bankruptcy case was inaccurate information. *Conrad v. Experian Info. Solutions, Inc.*, 2017 U.S. Dist. LEXIS 68641,

*13-14 (N.D. Cal. 2017). The Conrad court cited to a string of ten Northern District decisions so holding (all recently issued in 2017, the same year as the *Conrad* decision). The court granted with prejudice the motion to dismiss claims that failure to report the terms of a Chapter 13 bankruptcy plan after confirmation, in the place of the contractual terms, but before discharge is a violation of the FCRA. *Id.* at 14.

With respect to the assertion that violations of industry standards are sufficient to state a claim under the FCRA, the *Conrad* court stated:

> According to Conrad, the industry standard for reporting balances and monthly payments post-confirmation is to report in accordance with the terms of the Chapter 13 plan and list CII Code "D." Id. at 7. **Conrad alleges that a failure to list code "D" makes it appear as if "a consumer has not addressed outstanding debt obligations through the bankruptcy process" and that creditors are free to collect despite the stay, causing "a more negative inference regarding a consumer's credit worthiness."** *Id.* Conrad argues that Wells Fargo's reporting is inaccurate because they reported the pre-petition debts, rather than plan terms. Id. at 10-11.

> To support his argument, Conrad relies on *Nissou-Rabban v. Capitol One Bank (USA), N.A.*, where the court held that the plaintiff plausibly stated a claim under the FCRA by alleging a data furnisher failed to comply with Metro 2 by reporting an account as "charged off" rather than CII code "D" or "no data," and that such reporting may be misleading to those making credit decisions. No. 15-cv-01675, 2016 U.S. Dist. LEXIS 81373, 2016 WL 4508241, *4-*5 (S.D. Cal. June 6, 2016). **The Court notes that many courts in this district have distinguished or disagreed with *Nissou-Raban*.** See, e.g., *Devincenzi*, 2017 U.S. Dist. LEXIS 3741, 2017 WL 86131, at *6 ("[A]t most *Nissou-Raban* stands for the proposition that a furnisher that reports delinquent debts during the pendency of a bankruptcy should also report the fact that a bankruptcy is pending so that creditors know that those delinquent debts may be discharged in the future."); Anderson, 2017 U . S. Dist. LEXIS 33366, 2017 WL 914394, at *6 (**"[D]istrict courts within the Ninth Circuit overwhelmingly have held that a violation of industry standards is insufficient, without more, to state a claim for violation of the FCRA."**); *Doster*, 2017 U.S. Dist. LEXIS 8412, 2017 WL 264401, at *5 (collecting cases); *Mestayer v. Experian Info. Sols., Inc.*, No. 15-cv-03645 EMC, 2016 U.S. Dist. LEXIS 171528, 2016 WL 7188015, at *3 (N.D. Cal. Dec. 12, 2016) (holding that reporting accurate information but deviating from Metro 2 format was not misleading where bankruptcy also reported).

> As discussed above, an item on a credit report **may be inaccurate under the FCRA's** investigation provision if it is **"'patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'"** *Carvalho*, 629 F.3d at 890 (quoting *Gorman*, 584 F.3d at 1163 and 15 U.S.C. § 1681s-2(b)(1)(D)). Conrad alleges that in the credit report, Wells Fargo not only did not include the terms of the Chapter 13 plan, but also failed to report CII code "D" alerting lenders that the account was subject to Conrad's bankruptcy and did not mention the bankruptcy at all. Dkt. No. 15 at 10.

> This case is distinguishable from the cases disapproving of *Nissou-Raban* because

Conrad explicitly alleges that **Wells Fargo did not even mention the bankruptcy's existence**. . . . **It is therefore plausible that the failure to comply with industry standards** [to disclose that the debt was included in a pending bankruptcy case] **was "misleading in such a way and to such an extent that it [could] be expected to adversely affect credit decisions**." *Carvalho*, 629 F.3d at 890

*Conrad v. Experian Info. Solutions, Inc.*, 2017 U.S. Dist. LEXIS 68641, *14-18, 2017 WL 1739167

In *Lugo v. Experian Info. Solutions, Inc.*, 2017 U.S. Dist. LEXIS 76856 (N.D. Cal. 2017), the court addressed the failure of a Furnisher to update the information previously provided that stated the obligation had been "charged off" after the debtor had completed her Chapter 13 plan and obtained a discharge of the obligation. Though granting the motion to dismiss, the District Court in *Lugo* did so with leave to amend, stating:

Given the **functional difference between a confirmation and a discharge**, Plaintiff may be able to make out a plausible claim under these factual circumstances. However, she has not yet done so. Again, the **FCRA requires Plaintiff to show her credit report contained an inaccuracy, either because the information "'is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions**.'" *Gorman*, 584 F.3d at 1163 (quoting *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998)). Because the FAC does not explain what is meant by "charged off" in the manner used by TD Bank on her credit report, and does not explain how that status is inconsistent with a bankruptcy discharge, she has not satisfied the first element of an FCRA claim. The court cannot presume the designation is inaccurate or misleading; Plaintiff must plausibly allege it.

Based on this discussion, the FCRA claim against TD Bank will be dismissed with leave to amend.

*Id.* at *14-15, 2017 WL 2214641 (emphasis added).[14]

---

[14]   The difference between a "charged-off" debt and one for which a bankruptcy discharge has been obtained is significant. A creditor "charges-off" a debt when it appears difficult to collect or has aged past a certain date as required by applicable regulation. This can also afford the creditor some tax benefits, the "charge-off" being a bad loss deduction against then current profits. The creditor may continue to try and collect (or sell it to someone else to try and collect) the debt. The "charge-off" does not change the legal enforceability of the debt.

See, The Structure and Practices of the Debt Buying Industry, Federal Trade Commission January 2013; Market Snapshot: Online Debt Sales, Consumer Financial Protection Bureau January 2017.

However, after a discharge in bankruptcy is obtained, a permanent statutory injunction goes into effect prohibiting the enforcement of that debt as a personal liability of the debtor, debtor's exempt assets, debtor's post-bankruptcy acquired assets, and community property assets in which the debtor has an interest. 11 U.S.C. § 524(a). While not extinguishing the debt and the debt continuing to exist (*Dewsnup v. Timm*, 502 U.S. 410. 418-419 (1992); *Long v. Bullard*, 117 U.S. 617, 620-621 (1886)) the creditor holding the discharged debt will not be competing with post-bankruptcy creditors for payment of new

**Recent Ninth Circuit Court of Appeals Decisions**

At oral argument, Plaintiff-Debtor's counsel informed the court that a decision on a FCRA matter he had on appeal before the Ninth Circuit was pending and was anticipated to be issued shortly. The court has now reviewed that decision, *Green v. Experian Information Solutions, Inc*., 2019 U.S. App. LEXIS 8743 (9th Cir. 2019). In *Green*, the consumer plaintiffs (represented by current Plaintiff-Debtor's counsel) asserted that the failure of CRAs to report debts and furnishers of information to update information provided from the terms of the contract to be the terms as stated in Chapter 13 plans were inaccuracy violations under the FCRA.

The Ninth Circuit Panel in *Green*, splitting 2-1, affirmed the dismissal of the consumers' complaint on standing grounds based on the Supreme Court decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016). In *Spokeo*, a decision involving the FCRA, the Supreme Court addressed the requirement that there must be an alleged (concrete) injury in fact, not merely an alleged statutory violation for a consumer to have standing to assert a claim for the violation of the FCRA. The Supreme Court rejected the contention that merely alleging a statutory violation was sufficient injury to confer standing. *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 1548-49, 194 L. Ed. 2d 635 (2016). In discussing the concept of the "concrete" injury necessary to confer standing, the Supreme Court noted that "concrete" was not necessarily "tangible," with Congress having the power to create sufficient intangible injuries for which standing would exist in federal court. *Id.* at 1549.

With respect to the FCRA and the rights Congress has created therein concerning possible inaccurate information, the Supreme Court concluded:

> In the context of this particular case, these general principles tell us two things: On the one hand, Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk. On the other hand, Robins cannot satisfy the demands of Article III by alleging a bare procedural violation. A violation of one of the FCRA's procedural requirements may result in no harm. For example, even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate. In addition, not all inaccuracies cause harm or present any material risk of harm. An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more,

credit extended the post-discharge debtor. Thus, there is a significant difference between the two.

1    could work any concrete harm.

2    *Id.* at 1550.

3    On remand, in *Spokeo* the Ninth Circuit Court of Appeals' decision on what are sufficient

4    "concrete" damages to allege an actionable claim under the FCRA, includes the following analysis:

5

6    This second requirement makes clear that, in many instances, **a plaintiff will not be able to show a concrete injury simply by alleging that a consumer-reporting agency failed to comply with one of FCRA's procedures.** For example, a reporting agency's failure to follow certain FCRA requirements may not result in the creation or dissemination of an inaccurate consumer report. *See Spokeo II*, 136 S. Ct. at 1550. In such a case, the statute would have been violated, but that violation alone would not materially affect the consumer's protected interests in accurate credit reporting.

9    . . .

10   Nevertheless, Robins is not correct that any FCRA violation premised on some inaccurate disclosure of his information is sufficient. In *Spokeo II*, the Supreme Court explicitly rejected the notion that every minor inaccuracy reported in violation of FCRA will "cause [real] harm or present any material risk of [real] harm." *Id.* at 1550 (majority opinion). The Court gave the example of an incorrectly reported zip code, opining, "It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Id.* The Court left open the question of what other sorts of information would "merit similar treatment." *Id.* at 1550 n.8.

14

15   Thus, ***Spokeo II* requires some examination of the nature of the specific alleged reporting inaccuracies to ensure that they raise a real risk of harm to the concrete interests that FCRA protects.** See *Strubel*, 842 F.3d at 190 ("[E]ven where Congress has accorded procedural rights to protect a concrete interest, a plaintiff may fail to demonstrate concrete injury where violation of the procedure at issue presents no material risk of harm to that underlying interest."). Put slightly differently, the Court suggested that even if Congress determined that inaccurate credit reporting generally causes real harm to consumers, it cannot be the case that every trivial or meaningless inaccuracy does so. *See id.* Unfortunately, the Court gave little guidance as to what varieties of misinformation should fall into the harmless category, beyond the example of an erroneous zip code.

20   . . .

21   Further, determining whether any given inaccuracy in a credit report would help or harm an individual (or perhaps both) is not always easily done. For example, in support of Robins, the Consumer Financial Protection Bureau has argued that even seemingly flattering inaccuracies can hurt an individual's employment prospects as they may cause a prospective employer to question the applicant's truthfulness or to determine that he is overqualified for the position sought. Even if their likelihood actually to harm Robins's job search could be debated, the inaccuracies alleged in this case do not strike us as the sort of "mere technical violation[s]" which are too insignificant to present a sincere risk of harm to the real-world interests that Congress chose to protect with FCRA. *In re Horizon Healthcare*, 846 F.3d at 638; see also Spokeo II, 136 S. Ct. at 1556 (Ginsburg, J., dissenting) (describing Robins's allegations as "[f]ar from an incorrect zip code"). Robins's complaint thus sufficiently alleges that he suffered a concrete injury. *See In re Horizon Healthcare*, 846 F.3d at 638-41; *Strubel*, 842 F.3d at 190.

28   *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1115-1117 (9th Cir. 2017).

In 2019 the Ninth Court of Appeal had the opportunity to address the issues in *Jaras v. Equifax Inc.*, 2019 U.S. App. LEXIS 8743 (9th Cir. 1999). Two judges of the Ninth Circuit Panel in *Jaras* affirmed the dismissal of the complaint for failing to state a claim upon which relief could be granted under FCRA, stating:

> By contrast, Plaintiffs here **do not make any allegations about how the alleged misstatements in their credit reports would affect any transaction they tried to enter or plan to try to enter**—and it is not obvious that they would, given that Plaintiffs' bankruptcies themselves cause them to have lower credit scores with or without the alleged misstatements. They have therefore said nothing that would distinguish the alleged misstatements here from the inaccurate zip code example discussed by the Supreme Court in Spokeo. Indeed, Plaintiffs have not alleged that they tried to enter any financial transaction for which their credit reports or scores were viewed at all, or that they plan to imminently do so, let alone that the alleged inaccuracies in their credit reports would make a difference to such a transaction. Unlike the plaintiff in Spokeo, **Plaintiffs did not say anything about what kind of harm they were concerned about, other than making broad generalizations about how lower FICO scores can impact lending decisions generally**—without any specific allegation that lower FICO scores impact lending decisions regarding individuals who are already in Chapter 13 bankruptcy. Without any allegation of the credit report harming Plaintiffs' ability to enter a transaction with a third party in the past or imminent future, Plaintiffs have failed to allege a concrete injury for standing.

*Jaras v. Equifax, Inc.*, 2019 U.S. App. LEXIS 8743 at *7-8.

The third judge on the *Jaras* panel dissented, concluding that requiring pleading of an actual impact on a previous or imminent transaction to be beyond the requirements of the FCRA and the Constitution. She noted that given the widespread use of credit report information, often without the consumer having knowledge of its use and the consumer's creditworthiness being considered, the harm flowing from such inaccurate information will be occurring without the consumer being knowingly engaged in a transaction. *Id.* at *10-11, dissent to the decision of the majority of the Panel.

This split in the *Jaras* Ninth Circuit panel may reflect a policy difference arising from differing views of a consumer creditor report. First, there is a "*per se* violation" view, that any alleged inaccuracy is sufficient to show an alleged "concrete" harm for a consumer to have his or her day in court (without pre-determining whether there are any actual damages which flow therefrom or whether it is a sufficient "inaccuracy" for there to be an FCRA violation) given the ubiquitous and importance in . . . "modern life" of the information provided on a consumer credit report (Dissent, *Id.* at 10). On the other hand, the federal courts have the basic requirement that a

24

plaintiff cannot "plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). Instead, a complaint must set forth enough factual matter to establish plausible grounds for the relief sought. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."). As discussed below, these two views may not be so far apart, but only require that a plaintiff allege not only a violation of the letter of the law, but how such violation could result in a harm to the plaintiff which Congress seeks to prevent in the FCRA.

**DISCUSSION**

Defendant seeks to bring this litigation to a conclusion as a matter of law, based upon the factual matters to establish plausible grounds for the relief sought stated by Plaintiff-Debtor in the First Amended Complaint. Plaintiff-Debtor's focus is that since a Chapter 13 plan has been confirmed, though not completed, the only proper, relevant, "accurate" information concerning debt would be that the debt is subject to the as of yet uncompleted Chapter 13 Plan, and there is no final bankruptcy alternation of the claim.

While during a Chapter 13 bankruptcy case the terms of a Chapter 13 plan bind the creditors and debtor to the terms thereunder for the payments (if any) to be made on the creditors' claims, such "modified contracts" of what existed when the case was filed between the parties is not a final modification until the Chapter13 plan is completed. *See* 11 U.S.C. § 1327(a); if the debtor does not complete the plan and the case is dismissed or converted to one under Chapter 7, the former Chapter 13 plan and its modifications are of no further effect between the parties. *Harris v. Viegelahn*, 575 U.S. 510, 135 S. Ct. 1829, 1838 (2015).

While the terms of a Chapter 13 plan may modify the terms for the payment of the obligation owing to creditors for the term of the plan, and thereafter if the Chapter 13 plan is completed as permitted by 11 U.S.C. § 1322 and § 1325, "mere" confirmation does not permanently alter the obligation. As discussed in COLLIER ON BANKRUPTCY,

[C]onfirmation of a chapter 13 plan is not a discharge. Instead, confirmation of a

chapter 13 plan fixes the terms upon which claims are to be settled, subject to modification by the court.

Unless the chapter 13 debtor receives a discharge under section 1328, creditors are barred from recovering their claims only until the dismissal of the chapter 13 case and only to the extent that payment was received under the plan. Upon failure by the debtor to obtain a discharge under section 1328, allowed claims remain due and owing, except to the extent that actual payment was in fact made, because in such circumstances the chapter 13 case will ordinarily be dismissed or converted to chapter 7, nullifying the effect of the plan. A composition plan under chapter 13 therefore ultimately binds creditors only to the extent that there is compliance by the debtor with the payment terms of the plan resulting in a discharge under section 1328(a), unless the court grants a discharge under section 1328(b).

8 COLLIER ON BANKRUPTCY P 1327.02 (16TH 2019).

The significant, economic-life altering event is the completion of the Chapter 13 plan and the entry of the debtor's discharge. 11 U.S.C. § 1328, providing that after completion of all payments required under the Chapter 13 plan the court shall issue a discharge of debt, except as excluded in § 1328. Only when the discharge (discussed *infra*) has been entered is the enforceability of the obligation and the payment terms thereof permanently changed.

In considering the "no material issues of fact remaining to be resolved" stated by Plaintiff-Debtor in the First Amended Complaint to establish plausible grounds for the relief sought, the court distills these relevant plausible grounds to be:

A.     Plaintiff-Debtor commenced her bankruptcy case on November 16, 2015.

B.     Prior to the commencement of the bankruptcy case, Defendant had furnished information to CRAs that Debtor's obligation to Defendant had been placed in collection and there was a past due balance owed.

C.     Defendant filed two proofs of claim in the bankruptcy case.

      1.     There are no allegations that Plaintiff-Debtor objected to the claims or that there are any disputes as to the amount of the claims.

D.     Even though Plaintiff-Debtor had commenced a bankruptcy case, Defendant continued to allow the information that: (1) Plaintiff-Debtor owed money to Defendant and (2) the obligation that Plaintiff-Debtor owed Defendant was in collections to remain on Plaintiff-Debtor's consumer report.

E.     Plaintiff-Debtor asserts that the Consumer Data Industry Association has developed the Metro 2 format for credit reporting, as the "expert" on accurate credit reporting.

F.     When a consumer files bankruptcy, the Metro 2 Code "D" is to be furnished, to show that a Chapter 13 bankruptcy petition has been filed, a case is pending, but no discharge has been entered.

G.     Defendant failed to update the information it furnished to the CRAs to report that the obligation owed to Defendant was included in a pending bankruptcy case.

H.     Further, under the Metro 2 Format, it advises Furnishers to state that an obligation's balance is $0.00, notwithstanding the true dollar amount and change the payment history to "no data," rather than stating the accurate dollar amount and the accurate payment history.

I.     By failing to furnish information that the obligation was included in a current bankruptcy case, and failing to alter the information to inaccurately state that the obligation $0.00 and also delete the accurate payment history so that the credit report would have inaccurate information, Defendant was attempting to make the Plaintiff-Debtor pay the obligation outside of bankruptcy.

J.     Plaintiff-Debtor asserts that the only way for Plaintiff-Debtor to "remove" the accurate collections information and the accurate amount of the obligation from her consumer credit report would be to pay Defendant.

K.     Therefore, because of Plaintiff-Debtor and Plaintiff-Debtor's counsel's belief that Plaintiff-Debtor could have accurate information removed from her consumer credit report, which would then render the information left inaccurate, it is asserted that Defendant violated the automatic stay.

L.     By failing to alter the amount of the obligation to $0.00 and state an inaccurate amount rather than the undisputed amount that is owed and by failing to remove the accurate history of the obligation so that there was no credit report history of the unpaid obligation, it is asserted that damages have been incurred by Plaintiff-Debtor.

For the majority of what is asserted, Plaintiff-Debtor and Plaintiff-Debtor's counsel misunderstand what Congress requires to be furnished to a CRA. It is not inaccurate information, misstating the amount of the obligation, deleting accurate history of the transaction, or not reporting accurate current information in exchange for a payment that is required, or permitted, by the Congress in the FCRA. It is exactly the opposition - only accurate, truthful information - whether the consumer finds that information advantageous (making it easier to obtain future credit) or challenging (the amount of the unpaid obligations and transaction history showing the consumer's challenges in paying back credit obtained).

Though noted above, it is worth quoting Plaintiff-Debtor and Plaintiff-Debtor's counsel's assertion in the First Amended Complaint that:

55. As it currently stands, the **only way for Plaintiff[-Debtor] to remove the collections notation and past-due balance from her USAA account is to pay USAA** what it is reporting is owed, despite USAA filing claims in Plaintiff[-Debtor]'s case in order to be paid.

First Amended Complaint ¶ 55, Dckt. 18. Plaintiff-Debtor has not provided the court with any law

27

1　that supports the assertion that Plaintiff-Debtor can sanitize her consumer credit report, or force

2　Defendant to sanitize it, and remove the accurate amount of the obligation that she owes and the

3　accurate transaction/payment history information.

4　　　　Plaintiff-Debtor has not provided the court with any law by which a trade association can

5　enact guidelines or a standard of practice to override the Congressionally enacted statutory

6　requirements of the FCRA that the information in a consumer credit report be accurate.  The very

7　nature of what is argued –  that the amount of Plaintiff-Debtor's obligation can be misstated to be

8　$0.00 and the collection/transaction history be deleted – runs contrary to the fundamental reason

9　underlying the FCRA, "The banking system is dependent upon fair and accurate credit reporting.

10　Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit

11　reporting methods undermine the public confidence which is essential to the continued functioning

12　of the banking system."  15 U.S.C. § 1681.

13　　　　Even applying the more liberal standards discussed in the dissent in *Jaras*, Plaintiff-Debtor

14　has not stated any legal grounds for Defendant not changing accurate information and not deleting

15　accurate collection/transaction information (thereby making the information furnished and shown

16　on the consumer report inaccurate and false) as violating the FCRA.  Plaintiff-Debtor's disgust with

17　Defendant saying that the account is in "collection," notwithstanding Plaintiff-Debtor having filed

18　bankruptcy does not make it inaccurate.  Defendant is "collecting" the obligation, *abet*, as limited

19　by the Bankruptcy Code.

20　　　　Plaintiff-Debtor makes general, wide sweeping allegations that creditors furnish information

21　about unpaid debts to CRAs as part of their efforts to obtain payment.  Such may be a byproduct of

22　furnishing such information for consumers who would prefer to show a debt they owed, even if

23　delinquently paid, as paid.  Some consumers do not have that financial ability and the obligation will

24　show as unpaid - which is accurate information.

25　　　　What Plaintiff-Debtor does not allege is anything that Defendant did as part of demands for

26　payment, attempts to obtain payment, or "inducements" for payment outside of what is permitted

27　under the Bankruptcy Code.  Rather, Plaintiff-Debtor and Plaintiff-Debtor's counsel demonstrate

28　a misunderstanding (or blatant misstatement) of the law - believing that Plaintiff-Debtor could "buy"

a deletion of the collection/transaction history by paying Defendant outside of bankruptcy. It is true, that if Plaintiff-Debtor were to voluntarily pay Defendant in full (in a manner that would not violate the Bankruptcy Code, even if not required to do so as provided in the Chapter 13 plan, then Defendant would update the information furnished to show that the outstanding unpaid obligation was $0.00. But no such "demand" for payment was made by Defendant, no such payment made by Plaintiff-Debtor, and the outstanding, unpaid obligation of Plaintiff-Debtor is not zero.

Rather, Plaintiff-Debtor argues that she has suffered because she and her counsel believe that she can alter the consumer credit report to state inaccurate information. Such belief is not consistent with the law.

Plaintiff-Debtor's assertions that failing to change the amount of the obligation to $0.00, to delete the accurate collection/transaction history, and to inaccurately state that the obligation was not in collection are contrary to the plan language of the FCRA and the statutory legislative intent.

Therefore, the court grants the motion and will enter judgment for Defendant on all claims in the First Amended Complaint, with the exception of the one claim stated below that the failure to update the information provided to disclose that the claim is included in a pending bankruptcy case.

Plaintiff-Debtor's assertions that failing to change the amount of the obligation to $0.00, to delete the accurate collection/transaction history, and to inaccurately state that the obligation was not in collection are contrary to the plan language of the FCRA and the statutory legislative intent.

**Failure to Report that the Obligation Was Included
In a Pending Bankruptcy Case**

The other asserted improper conduct is that Defendant did not update the information on the obligation it furnished to the CRA to show that the obligation was included in a pending bankruptcy case. Defendant asserts that there is no affirmative obligation requiring a furnisher to update information to state that an obligation is included in a pending bankruptcy case. Presumably, Defendant would further assert that even when the obligation has been discharge and Defendant could not legally attempt to enforce the obligation as a personal liability of Plaintiff-Debtor, that it is not required to update the information that the debt has been discharged.

Discharge Granted - Violation of Discharge Injunction

For those practicing in the area of bankruptcy, few legal points are as sanctified as the bankruptcy discharge and statutory injunction flowing therefrom. Once the discharge is entered, the creditor cannot attempt, as a matter of federal law, to enforce that as a personal obligation of the consumer. The creditor holding a discharged obligation cannot seek to obtain payment, obtain a judgment against the consumer, cannot enforce a pre-bankruptcy judgment that is subject to the discharge against the consumer personally (or any of the consumer's assets for which the creditor is not holding a pre-bankruptcy lien), and will not be competing with any "new" creditors who are doing business with the post-discharge consumer.

Failing to disclose that the debt has been discharged and cannot be enforced personally, may well be highly inaccurate information left on a consumer's credit report. It may well cause other potential new lenders who want to do business with the post-discharge debtor to refrain due to what (improperly) appears to be an outstanding, enforceable obligation.

However, Plaintiff-Debtor has not alleged, and cannot allege, that Defendant did not update the information provided to the credit reporting agencies had not been updated to state that the obligation was discharged for a very simple reason – Plaintiff-Debtor has not yet been granted a discharge of the obligation owed to Defendant.

Plan Confirmed, No Discharge - Violation of the Automatic Stay

Second, in sanctity to the discharge injunction to those in the bankruptcy world, is that when a person files bankruptcy creditors are stayed as provided in 11 U.S.C. § 362(a), subject to some statutory exceptions, from seeking to enforce pre-bankruptcy obligations. Chapter 13 plans will take three to five years to complete. During that time, a debtor may well be operating a sole proprietorship business, seek to rent a new abode, or otherwise take other steps in life as part of their ongoing financial reorganization. Some of these steps may require obtaining new post-bankruptcy credit or third-parties considering a debtor's financial conduct during the performance of the bankruptcy plan.

Plaintiff-Debtor asserts that Defendant's failure to update the information furnished to the CRAs that the obligation owed to Defendant is part of an open bankruptcy case is a violation of the

automatic stay in an attempt to force the Plaintiff-Debtor to pay the pre-petition debt other than as provided in the Chapter 13 plan. Plaintiff-Debtor asserts that the failure to include such information is part of a coordinated, intentional debt collection effort to coerce Plaintiff-Debtor to pay the obligation notwithstanding the bankruptcy case and the protections afforded under the Bankruptcy Code. Plaintiff-Debtor asserts that Defendant did so, well aware of Plaintiff-Debtor's demands for the information to be corrected.

The allegations of how and what was done by virtue of not updating the information provided with the Metro Code 2 D to force Plaintiff-Debtor to pay the debt in violation of the automatic stay include:

> 36. USAA knows that by not reporting the CII "D" AND reporting an account delinquent its reporting the debt in a manner that would coerce payments because USAA knows that such reporting alerts other lenders that this debt SHOULD be paid but has not been paid.
> . . .
>
> 42. Plaintiff's dispute letter indicated that she had filed for chapter 13 bankruptcy protection and the account needed to be updated to reflect the bankruptcy.
> . . .
>
> 48. Ms. Bain ignored the ACDV and Plaintiff's dispute and instead confirmed to Equifax Information Services, LLC that Plaintiff's account with USAA was in fact in collections without making any reference to the underlying chapter 13 bankruptcy proceeding.
>
> 49. To be clear, despite USAA having actual knowledge of the bankruptcy filing and despite USAA being put on specific notice that they were NOT reporting the bankruptcy USAA intentionally chose NOT to report the bankruptcy.
>
> 50. Ms. Bain's lack of an update in response to Plaintiff's dispute was done intentionally in order to allow for USAA to continue its collection efforts.
>
> 51. Ms. Bain knew that failure to update the CII would exert more pressure on Plaintiff and coerce payment .
>
> 52. USAA did not update its reporting on Plaintiff's credit report to reflect that the account was included in bankruptcy despite being aware of the bankruptcy.
> . . .
>
> 54. By failing to update its reporting on Plaintiff's credit report USAA's intent is that Plaintiff will make a payment on the account despite Plaintiff being in an active bankruptcy.
> . . .
>
> 63. Instead of updating the account to reflect the bankruptcy filing, USAA ignored Plaintiff's dispute and industry guidelines on how to report accounts subject to a chapter 13 bankruptcy and took affirmative steps to confirm that the collections and

1   charge-off notation was correct.

2   64. USAA's intent for not reporting the CII was to continue its collection efforts against Plaintiff by harming her credit score.

3

4   65. By not reporting the correct CII the only way for Plaintiff to address the derogatory and inaccurate reporting is for her to pay the balance that USAA indicates is owed.

5

6   First Amended Complaint, ¶ 36; Dckt. 18 (emphasis in original).

7   The Ninth Circuit Court of Appeals discussed the automatic stay and the obligations of a

8   party violating the stay in *Sternberg v. Johnson*, 595 F.3d 937 (9th Cir. 2009). In short, there is the

9   affirmative duty on the person violating the stay to correct the violation, not on the bankruptcy

10  debtor to force the person to correct the violation. In the plain language of the Ninth Circuit Court

11  of Appeals:

12

13  To comply with his "affirmative duty" under the automatic stay, Sternberg needed to do what he could to relieve the violation. He could not simply rely on the normal adversarial process. See *Johnston Envtl. Corp. v. Knight (In re Goodman)*, 991 F.2d

14  613, 615-16 (9th Cir. 1993) (holding that parties who attempted to exempt a debtor from their unlawful detainer action with a unilateral stipulation still violated the

15  automatic stay because "the stipulation might not [have] accomplish[ed] its intended purpose" and thus the parties "could have, and should have, pursued the orthodox

16  remedy: relief from the automatic stay"). At a minimum, he had an obligation to alert the state appellate court to the conflicts between the order and the automatic stay. As

17  we have explained before, "[t]he automatic stay is intended to give the debtor a breathing spell from his creditors." *Goichman v. Bloom (In re Bloom)*, 875 F.2d 224,

18  226 (9th Cir. 1989) (internal quotation marks omitted). The state court order intruded upon Johnston's "breathing spell." Sternberg did not act to try to fix that problem.

19  . . .

20  Johnston [the debtor] was not required to ask Sternberg [the creditor] to modify the order for Sternberg's violation to be willful. See *In re Del Mission Ltd.*, 98 F.3d at

21  1151-52 (concluding that the retention of taxes was a violation of the stay even though the debtor never requested their return). Likewise, Sternberg needed neither

22  to make some collection effort nor to know that his actions were unlawful for his violation to be willful. See *Eskanos*, 309 F.3d at 1214-15 (rejecting the law firm's

23  assertion that something more than maintaining an active collection action was needed to violate the stay); *In re Goodman*, 991 F.2d at 618 ("Whether the

24  [defendant] believes in good faith that it had a right to the property is not relevant to whether the act was 'willful' . . . ." (internal quotation marks omitted)). All that is

25  required is that Sternberg "knew of the automatic stay, and [his] actions in violation of the stay were intentional." *Eskanos*, 309 F.3d at 1215. Both of these elements were

26  satisfied here.

27  *Sternberg v. Johnson*, *Id.* at 944-945.

28  At this juncture, it is alleged that not updating the credit report is done as part of and has the

32

effect of pressuring a bankruptcy debtor to pay a debt. Such is alleged, but not yet proven. This contention is focused on the accuracy of the information and not, as above, an assertion that the FCRA and Bankruptcy Code work to have a creditor put false or inaccurate information on the credit report.

Such is alleged, but not yet proven. This contention is focused on the correct accuracy of the information and not, as above, an assertion that the FCRA and Bankruptcy Code work to have a creditor put false or inaccurate information on the credit report.

These allegations are very specific and for which "The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Bankr. P. 9011(b)(3). The Plaintiff is proceeding to the opportunity to present the evidence of such activities and how the failure to update the information using the Metro 2 Code D was part of the collection activities that violated the automatic say.

The court denies the Motion with respect to the claim asserted that the failure to update the information furnished to the CRAs that this debt owed by this Plaintiff-Debtor to this Defendant creditor was included in the pending Chapter 13 case, which is asserted to be the Metro 2 Code "D" was a violation of the automatic stay.

Therefore, judgment is granted for Defendant USAA Savings Bank on all claims asserted by Plaintiff-Debtor in the First Amended Complaint except the claim that failure of Defendant to update the information furnished to the CRAs was a violation of the automatic stay. One unified judgment will be entered in this Adversary Proceeding after this one remaining claim is adjudicated.

The court shall enter a separate order granting judgment for Defendant on all claims except the one asserting that failure to update the information provided to CRAs to disclose that the obligation reported is subject to a pending bankruptcy case.

///

///

///

///

33

This Memorandum Opinion and Decision constitutes the court's findings of fact and conclusions of law for this Motion for Judgment on the Pleadings.

**Dated:** February 21, 2020      **By the Court**

**Ronald H. Sargis, Judge**
**United States Bankruptcy Court**

# Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked ____, via the U.S. mail.

| Debtors / Plaintiff-Debtor | Attorney for the Debtors / Plaintiff-Debtor |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | Office of the U.S. Trustee<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA 95814 |
| Jaime Y. Ritton, Esq.<br>Joshua N. Kastan, Esq.<br>535 Pacific Avenue, #101<br>San Francisco, CA 94133 | |